| | |
|---|---|
| KIMBERLY GUNTER,<br><br>        Plaintiff,<br><br>-against-<br><br>AT&T SERVICES, INC.,<br><br>        Defendant. | Case No. 4:19-CV-00589-HFS<br><br>**ORAL ARGUMENT REQUESTED** |

# DEFENDANT'S SUGGESTIONS IN SUPPORT OF
# MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

## TABLE OF CONTENTS

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| FACTUAL AND PROCEDURAL BACKGROUND | 2 |
| ARGUMENT | 5 |
|     A. The Federal Arbitration Act ("FAA") Requires the Court to Compel Plaintiff to Arbitrate Her Claims. | 5 |
|     B. The Parties Entered a Valid Arbitration Agreement. | 6 |
|     C. Gunter's Claims Are Within the Scope of the Agreement. | 10 |
| CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Amtex Sec., Inc.*,
 542 F.3d 1193 (8th Cir. 2008) ............................................................................................... 6

*Agri Process Innovations, Inc. v. Envirotrol, Inc.*,
 338 S.W.3d 381 (Mo. Ct. App. 2011) .................................................................................... 7

*AT&T Mobility Services LLC v. Inzerillo*,
 No. 17-cv-00841-HFS (W.D. Mo. Jan. 31, 2018) (Sachs, J.) ....................................... 8, 9, 11

*AT&T Mobility Servs. LLC v. Inzerillo*,
 No. 4:17-cv-00841-HFS (W.D. Mo. Jan. 31, 2018) (Sachs, J.) .............................................. 1

*Best Buy Builders, Inc. v. Siegel*,
 409 S.W.3d 562 (Mo. Ct. App. 2013) .................................................................................... 7

*Bolden v. AT&T Servs., Inc.*,
 350 F. Supp. 3d 1029 (D. Kan. 2018) .................................................................................... 1

*Carlisle v. CitiMortgage, Inc.*,
 No. 4:06-CV-677 CAS, 2007 WL 1557411 (E.D. Mo. May 25, 2007) ............................... 11

*Carter v. Firestone*,
 No. 4:05CV2042 ERW, 2006 WL 1153808 (E.D. Mo. Apr. 28, 2006), *aff'd*,
 242 F. App'x 375 (8th Cir. 2007) ...................................................................................... 8, 9

*Circuit City Stores, Inc. v. Adams*,
 532 U.S. 105 (2001) ............................................................................................................... 5

*Citibank (South Dakota), N.A. v. Wilson*,
 160 S.W.3d 810 (Mo. Ct. App. 2005) ........................................................................... 6, 7, 8

*Couch v. AT&T Servs., Inc.*,
 No. 13-CV-2004 (DRH)(GRB), 2014 WL 7424093 (E.D.N.Y. Dec. 31, 2014) ................... 2

*Danielski v. AT&T*,
 Cause No. D-1-GN-14-000718 (Tex. Dist.–Travis Cnty., May 28, 2014) ............................ 2

*Epic Sys. Corp. v. Lewis*,
 138 S. Ct. 1612 (2018) ........................................................................................................... 6

*Faber v. Menard, Inc.*,
 367 F.3d 1048 (8th Cir. 2004) ............................................................................................... 6

*Gilmer v. Interstate/Johnson Lane Corp.*,
 500 U.S. 20 (1991) ............................................................................................................6

*Heritage Roofing, LLC v. Fischer*,
 164 S.W.3d 128 (Mo. Ct. App. 2005) ...............................................................................7

*State ex rel. Hewitt v. Kerr*,
 461 S.W.3d 798 (Mo. 2015) (en banc) ..............................................................................5

*Karzon v. AT&T, Inc.*,
 No. 4:13-CV-2202 (CEJ), 2014 WL 51331 (E.D. Mo. Jan. 7, 2014) ........................... 7, 11

*Leatherberry v. Vill. Green Mgmt. Co.*,
 No. 4:09CV2101MLM, 2010 WL 546871 (E.D. Mo. Feb. 9, 2010) ............................ 10, 11

*Lyster v. Ryan's Family Steak Houses, Inc.*,
 239 F.3d 943 (8th Cir. 2001) ............................................................................................10

*McIntosh v. Tenet Health Sys. Hosps., Inc.*,
 48 S.W.3d 85 (Mo. Ct. App. 2001) ..................................................................................10

*Powe v. AT&T d.b.a. AT&T Mobility*,
 No. 3:15-cv-00022-GFVT (E.D. Ky. Mar. 25, 2016) ..........................................................2

*Schoenfeld v. U.S. Resort Mgmt., Inc.*,
 No. 05-4368-CV-C-WAK, 2006 WL 2707345 (W.D. Mo. Sept. 19, 2006) .................. 6, 11

*Speedie Food Mart, Inc. v. Taylor*,
 809 S.W.2d 126 (Mo. Ct. App. 1991) ..............................................................................10

*Stewart v. AT&T Mobility Servs., Inc.*,
 No. SACV 17-02076-CJC (C.D. Cal. Feb. 5, 2018) ....................................................... 1, 2

*Wagman v. AT&T Mobility Servs., LLC*,
 No. 14CV05477 (Or.–Multnomah Cnty., Sept. 17, 2014) ..................................................2

*Walker v. Rogers*,
 182 S.W.3d 761 (Mo. Ct. App. 2006) ................................................................................7

**Statutes**

9 U.S.C.
 § 3 .......................................................................................................................................5
 § 4 ................................................................................................................................... 1, 5

Federal Arbitration Act ............................................................................................... 1, 4, 5

Missouri Human Rights Act ......................................................................................... 2, 11

**Other Authorities**

Local Rule 7.0(c)......................................................................................................................1

Defendant AT&T Services, Inc. ("AT&T" or the "Company"),[1] by counsel and pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 4, and Local Rule 7.0(c), hereby submits these Suggestions in Support of its Motion to Compel Arbitration and Stay Proceedings.[2]

## **PRELIMINARY STATEMENT**

The Company notified Kimberly Gunter ("Gunter" or "Plaintiff") in writing in December 2011 that if she continued her employment with the Company and did not opt-out of the Management Arbitration Agreement ("Agreement") by February 6, 2012, she and the Company were agreeing to arbitrate any disputes they had between them. Gunter was then reminded in writing of the terms of the Agreement, the method of acceptance, and her ability to opt out without incurring any negative consequences to her employment on two separate occasions in December 2011 and January 2012. Gunter did not opt-out. However, in contravention of the Agreement, Gunter filed a lawsuit against the Company in a Missouri state court, alleging claims stemming from her employment with AT&T. When asked to submit that dispute to arbitration, Gunter refused. In a case involving identical facts and the same Agreement at issue here, this Court granted the Company's motion to compel arbitration. *AT&T Mobility Servs. LLC v. Inzerillo*, No. 4:17-cv-00841-HFS (W.D. Mo. Jan. 31, 2018) (Sachs, J.) (compelling arbitration where defendant failed to opt out of arbitration agreement).[3] Courts in other jurisdictions have done the same. *See Bolden v. AT&T Servs., Inc.*, 350 F. Supp. 3d 1029 (D. Kan. 2018); *Stewart*

---

[1] Plaintiff did not exhaust her administrative remedies as to any claims against AT&T Services, Inc., so all of her claims are subject to dismissal on this separate, independent basis.

[2] These Suggestions are supported the Declaration of Kathleen A. Matyola ("Matyola Decl."); the Declaration of Jeremy Dunlap ("Dunlap Decl."), the Declaration of Jason Kaip ("Kaip Decl."), the Declaration of Vivian Lewis ("Lewis Decl."), the Declaration of Susan D. Bounds ("Bounds Declaration"), the Declaration of Hilda Ramirez ("Ramirez Decl."), the Declaration of Jeff Nahlik ("Nahlik Decl."), and Declaration of Daniel Boatright ("Boatright Decl.").

[3] This opinion is attached to the declaration of Sara B. Tomezsko, submitted in support of Defendant's motion.

*v. AT&T Mobility Servs., Inc.*, No. SACV 17-02076-CJC (C.D. Cal. Feb. 5, 2018); *Powe v. AT&T d.b.a. AT&T Mobility*, No. 3:15-cv-00022-GFVT (E.D. Ky. Mar. 25, 2016); *Couch v. AT&T Servs., Inc.*, No. 13-CV-2004 (DRH)(GRB), 2014 WL 7424093 (E.D.N.Y. Dec. 31, 2014); *Wagman v. AT&T Mobility Servs., LLC*, No. 14CV05477 (Or.–Multnomah Cnty., Sept. 17, 2014); *Danielski v. AT&T*, Cause No. D-1-GN-14-000718 (Tex. Dist.–Travis Cnty., May 28, 2014).[4] Therefore, for the reasons set forth below, Defendant hereby requests entry of an order compelling arbitration of Plaintiff's claims and staying further proceedings before this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 12, 2019, Plaintiff filed a Petition in the Circuit Court of Jackson County, Missouri. (ECF No. 1-1 ("Pet.").) In her Petition, Plaintiff alleges that she was employed by AT&T from 1997 until March 23, 2018, when she was terminated for the stated reason that she violated corporate policy. (ECF No. 1-1, Pet. ¶¶ 11, 70.) Plaintiff purports to bring claims of sex discrimination, race discrimination, and retaliation in violation the Missouri Human Rights Act. (ECF No. 1-1, Pet. ¶¶ 75, 83, 91.)

On July 26, 2019, AT&T removed the case to this Court on the basis of diversity jurisdiction. (ECF No. 1.) But Plaintiff's claims are not subject to adjudication in this Court—or *any* court for that matter—because at the time of the Company's alleged adverse action against her, Gunter was bound by an arbitration agreement under which she had agreed to submit "any dispute to which [the] Agreement applies [to] final and binding arbitration instead of court litigation." (Matyola Decl. ¶ 7 & Exh. 2.)

On December 2, 2011, the Company sent an email to Gunter at her unique AT&T-provided email address, kb6769@us.att.com, with the subject heading "Action Required:

---

[4] Orders granting motions to compel arbitration in *Stewart*, *Powe*, *Wagman*, and *Danielski* are attached to the declaration of Sara B. Tomezsko, submitted in support of Defendant's motion.

Arbitration Agreement," advising her that it had created an arbitration program that would apply to any future claims brought between them if she did not opt out of the program within 60 days (by 11:59 p.m. February 6, 2012), and providing instructions on how to opt out.[5] (Dunlap Decl. ¶¶ 6, 8 & Exhs. 1, 2; Ramirez Decl. ¶ 4 (Gunter's unique user ID was kb6769); Nahlik Decl. ¶ 4 (one of employees' email addresses followed convention [*employee's unique user identification*] @us.att.com).) The email advised Gunter that the decision was "entirely up to [her]," and that there would be "no adverse consequences for anyone opting out of the Management Arbitration Agreement." (Matyola Decl. ¶ 6 & Exh. 1; Dunlap Decl. ¶ 6 & Exh. 1.) It also made clear that "[i]f you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement." (Matyola Decl. ¶ 6 & Exh. 1; Dunlap Decl. ¶ 6 & Exh. 1.)

The email further indicated that "[t]o help [her] make [her] decision, it [was] very important for [Gunter] to review the Management Arbitration Agreement linked to this email," and provided a link—using the words "[c]lick here to review"—to a web page containing the text of the Agreement itself. (Matyola Decl. ¶¶ 6, 7 & Exhs. 1, 2; Dunlap Decl. ¶¶ 6, 9 & Exhs. 1, 3.) Gunter's position required her to read and respond appropriately to email delivered to the kb6769@us.att.com account. (Kaip Decl. ¶ 5.) Gunter's assistant, who had access to her work-provided email account for legitimate business purposes, would not have deleted any emails regarding the Agreement. (Lewis Decl. ¶ 7.)

The Company made efforts to ensure that employees like Gunter were apprised of the terms of the Agreement. On December 17, 2011, and January 18, 2012, the Company sent additional emails to Gunter reminding her of the Agreement and the February 6, 2012 opt-out

---

[5] The opt-out process for employees who did not want to be bound by the Agreement was simple; it merely involved electronically registering that decision on a web page set up for that purpose. Indeed, during the designated opt-out period thousands of employees exercised their right to opt out of the Agreement. (Ramirez Decl. ¶ 7.)

3
LEGAL_US_W # 99542502.5
Case 4:19-cv-00589-HFS   Document 9   Filed 09/03/19   Page 8 of 18

deadline. (Dunlap Decl. ¶ 8 & Exh. 2.) Each of these follow-up emails was identical to the December 2, 2011 email, and included a summary of the material terms of the Agreement, instructions on how to opt-out, the deadline for opting out, and a link to the full text of the Agreement. (*Id.*, ¶¶ 6, 8 & Exhs. 1, 2.) If employees' email accounts generated automated responses to the Company's offer emails (e.g., undeliverable messages or "out of office" replies), those messages were collected and stored. (Bounds Decl. ¶ 7.) The Company's records reflect that Gunter's email account generated an out of office reply message in response to the December 17, 2011, email, indicating that the message has been successfully delivered to her email account.[6] (*Id.*, ¶ 8 & Exh. 1.)

The Agreement, by its specific terms, "is governed by the Federal Arbitration Act" and applies to "any claim that [Gunter] may have against . . . any AT&T company." (Matyola Decl. ¶ 7 & Exh. 2.) The Agreement explicitly covers "claims includ[ing] without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship . . . termination . . . retaliation, discrimination or harassment . . . and all other state and local statutory and common law claims." (*Id.*)

Gunter did not opt out of the Agreement, which, by its terms, went into effect on February 7, 2012. (Ramirez Decl. ¶ 8.) Rather than attempting to resolve her disputes with the Company through the arbitration program, Gunter filed the suit in state court, in contravention of the valid and enforceable Agreement. Indeed, even after being reminded of her obligations under the Agreement, Gunter refused to submit her claims to arbitration. (Boatright Decl. ¶ 5.)

---

[6] According to the Company's records, neither the December 2, 2011, nor the January 18, 2012, emails sent to Gunter concerning the Agreement generated any type of automated reply, such as an "undeliverable" or "out of office" message, that would indicate those emails were not successfully delivered. (Bounds Decl. ¶ 8.)

4

LEGAL_US_W # 99542502.5

**ARGUMENT**

**A.  The Federal Arbitration Act ("FAA") Requires the Court to Compel Plaintiff to Arbitrate Her Claims.**

The Court should stay this case and order Gunter to arbitrate her claims pursuant to the FAA, 9 U.S.C. § 4, because Gunter entered into a valid and enforceable arbitration agreement that covers the claims she now asserts in the wrong forum. The Agreement, by its express terms, is governed by the FAA.[7] (Matyola Decl. ¶ 7 & Exh. 2.) The FAA permits a party to a written arbitration agreement to petition a United States district court for an order compelling the parties to arbitrate. In relevant part, the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Arbitration agreements between employers and employees engaged in interstate commerce (with the exception of "transportation workers") are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111–12 (2001). The United States Supreme Court has repeatedly confirmed that the FAA codifies the "liberal federal policy

---

[7]  The explicit reference to the FAA should be sufficient to bring the Agreement within its purview. In any event, there can be no dispute that the FAA applies here. The Company markets and sells products in interstate commerce and has customers throughout the country. (Kaip Decl. ¶ 4.) The FAA governs the applicability of arbitration agreements in all contracts regarding interstate commerce or "evidencing a transaction involving commerce." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 (Mo. 2015) (en banc) (quoting 9 U.S.C. § 2). The fact that an employer engages in business and generates revenue in multiple states is sufficient to bring the Agreement under the umbrella of the FAA's application. *Id.*

favoring arbitration agreements," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991), and requires courts to enforce arbitration agreements according to their terms. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018); *see also 3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (an arbitration agreement should be construed "liberally, resolving any doubts in favor of arbitration").

When reviewing an arbitration agreement, the Eight Circuit "ask[s] only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Schoenfeld v. U.S. Resort Mgmt., Inc.*, No. 05-4368-CV-C-WAK, 2006 WL 2707345, at *1 (W.D. Mo. Sept. 19, 2006) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In this case, the parties have entered into a valid agreement to arbitrate and the claims alleged in Gunter's Petition are covered by that agreement. The court should therefore compel the parties to arbitrate Gunter's claims.

**B.     The Parties Entered a Valid Arbitration Agreement.**

A valid agreement to arbitrate has existed between Gunter and the Company since February 7, 2012. Ordinary principles of state contract law govern the validity of an arbitration agreement, and courts must evaluate agreements to arbitrate under the same standards as any other contract. *Faber*, 367 F.3d at 1052. "A contract is enforceable under Missouri law if there is an offer, an acceptance of the offer, and consideration." *Schoenfeld*, 2006 WL 2707345, at *1; *see also Citibank (South Dakota), N.A. v. Wilson*, 160 S.W.3d 810, 813 (Mo. Ct. App. 2005).

In this case, the Company's email to Gunter plainly constituted an offer to enter into an agreement to arbitrate future claims. That email specifically laid out the material provisions of

6

LEGAL_US_W # 99542502.5

Case 4:19-cv-00589-HFS   Document 9   Filed 09/03/19   Page 11 of 18

the Agreement—that is, the mutual promises to arbitrate, the nature of the claims subject to arbitration, and the exclusive nature of the arbitration remedy—and specified a method and deadline for acceptance; the email further made reference to and attached the full text of the Agreement. (Matyola Decl. ¶ 7 & Exh. 2.) *See Agri Process Innovations, Inc. v. Envirotrol, Inc.*, 338 S.W.3d 381, 390 (Mo. Ct. App. 2011) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.") (internal quotation marks and citation omitted).

It is equally clear that, by choosing not to opt out of the Agreement, Gunter accepted the Company's offer. It is well established in Missouri that "[a]cceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Walker v. Rogers*, 182 S.W.3d 761, 768 (Mo. Ct. App. 2006) (internal quotation marks and citation omitted). "Acceptance of an offer need not be made by spoken or written word." *Wilson*, 160 S.W.3d at 813; *see also Heritage Roofing, LLC v. Fischer*, 164 S.W.3d 128, 134 (Mo. Ct. App. 2005) ("A signature is not required in order to show mutuality or assent to the terms of a writing.") (citation omitted); *Karzon v. AT&T, Inc.*, No. 4:13-CV-2202 (CEJ), 2014 WL 51331, at *2 (E.D. Mo. Jan. 7, 2014). Instead, "[a]ssent can be shown in other ways, such as by the parties' conduct" or, as in this case, a failure to act. *Fischer*, 164 S.W.3d at 134 (citation omitted); *see also Best Buy Builders, Inc. v. Siegel*, 409 S.W.3d 562, 565 (Mo. Ct. App. 2013) ("The parties' course of conduct may lead to the necessary implication that a contractual obligation exists.") (quoting *Guidry v. Charter Commc'ns., Inc.*, 269 S.W.3d 520, 529 (Mo. Ct. App. 2008)); *Karzon*, 2014 WL 51331, at *2. "This is especially true where services are rendered under circumstances such that the party benefited thereby knows the terms on which they are being offered. If this party receives the benefit of the services in silence, when there

7

LEGAL_US_W # 99542502.5

Case 4:19-cv-00589-HFS   Document 9   Filed 09/03/19   Page 12 of 18

was a reasonable opportunity to reject them, this party is manifesting assent to the terms proposed and thus accepts the offer." *Citibank (S. Dakota), N.A. v. Wilson*, 160 S.W.3d 810, 813 (Mo. Ct. App. 2005) (internal quotation marks and citation omitted); *see also Carter v. Firestone*, No. 4:05CV2042 ERW, 2006 WL 1153808 (E.D. Mo. Apr. 28, 2006), *aff'd*, 242 F. App'x 375 (8th Cir. 2007) (finding that employee's continued employment constituted agreement to be bound by amended terms of dispute resolution plan despite employee's refusal to sign acknowledgement form indicating that he had received the new terms).

It is precisely so here. The Company sent *multiple* emails to Gunter's work email account, each of which contained the material terms of the Agreement and linked to the Agreement's complete text, and each of which informed Gunter that if she continued her employment with the Company without opting out of the Agreement, she would be bound by the Agreement's terms. (Matyola Decl. ¶ 6 & Exh. 1; Dunlap Decl. ¶¶ 6, 8 & Exhs. 1, 2.) It is clear from the Company's records that Gunter received these emails. (Bounds Decl. ¶ 8.) Gunter then did precisely what the Company's offer invited—she continued working for the Company past February 6, 2012 without opting out of the Agreement. (Ramirez Decl. ¶ 8.) Gunter's Petition admits that she remained employed by the Company until March 23, 2018, more than six years after the effective date of the Agreement. (Pet. ¶ 70.)

This case is no different from *AT&T Mobility Services LLC v. Inzerillo*, No. 17-cv-00841-HFS (W.D. Mo. Jan. 31, 2018) (Sachs, J.), in which this Court granted AT&T's motion to compel arbitration under nearly identical facts. The AT&T employee in that case, Inzerillo, received the same offer emails as Gunter did about the same Agreement in late 2011 and early 2012. *Id.*, slip op. at 1–2. And like Gunter, Inzerillo failed to opt out of the Agreement and continued working beyond the February 6, 2012, deadline to do so. *Id.*, slip op. at 2. This Court

8

LEGAL_US_W # 99542502.5

Case 4:19-cv-00589-HFS Document 9 Filed 09/03/19 Page 13 of 18

held that Inzerillo's conduct constituted acceptance of AT&T's offer to be bound by the Agreement's terms. *Id.*, slip op. at 5 ("Accordingly, Inzerillo's failure to opt out of the arbitration program and his continued employment at AT&T is sufficient to show that he accepted the terms of the arbitration agreement."). In so holding, this Court relied on case law from both Missouri state and federal courts and the Eighth Circuit Court of Appeals for the proposition that a failure to follow opt out procedures constitutes acceptance, all of which compel a similar result here. *Id.* (citing *Cicle v. Chase Bank USA*, 583 F.3d 549, 555 (8th Cir. 2009) (cardholder "had ample opportunity and time to opt out of the amendment [to arbitration agreement] before it took effect, but instead continued to use the card. By doing so, according to the terms of the notice, she affirmative accepted the agreement."); *Berkey v. Dillard's Inc.*, 450 F.3d 775, 777 (8th Cir. 2006); *Cova v. Charter Comms., Inc.*, No. 4:16-cv-469-RLW, 2017 WL 666097 (E.D. Mo. Feb. 17, 2017) (considering Missouri case law and concluding that arbitration agreement deemed accepted by failure to opt-out); *Wilson*, 160 S.W.3d at 813).

Finally, the Company provided adequate consideration for Gunter's promise to arbitrate her claim because that promise was mutual—the Company, too, is required by the Agreement to arbitrate any claims it might have had against Gunter. (Matyola Decl. ¶ 7 & Exh. 2 ("[T]his agreement also applies to any claim that the Company or any other AT&T company may have against you."); *id.*, ¶ 6 & Exh. 1 ("Under this process, employees and the company would use independent, third-party arbitration rather than courts or juries to resolve legal disputes. . . . This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement.").) The fact that the employer is willing to give up its own legal right to defend itself in court and submit its defense to arbitration constitutes consideration. *See, e.g.*, *Carter*, 2006 WL 1153808, at *3 ("In addition, the EDR Plan reflects each party's mutual agreement to

9
LEGAL_US_W # 99542502.5

Case 4:19-cv-00589-HFS   Document 9   Filed 09/03/19   Page 14 of 18

submit employment-related claims to binding mediation and arbitration. This mutuality serves as additional consideration to support the EDR Plan.") (citations omitted); *Leatherberry v. Vill. Green Mgmt. Co.*, No. 4:09CV2101MLM, 2010 WL 546871, at *3 (E.D. Mo. Feb. 9, 2010) ("[B]ecause the arbitration provision obligated both Plaintiff and Defendant Village Green to arbitrate and abide by the arbitration decision, there was *mutual obligation*.") (emphasis in original); *McIntosh v. Tenet Health Sys. Hosps., Inc.*, 48 S.W.3d 85, 89 (Mo. Ct. App. 2001) (consideration present where employer agreed "to submit all claims and disputes it may have" with employee to arbitration).

All elements of a valid and binding contract are present here. Therefore, Gunter enjoyed (and still enjoys) the benefit of the Company's reciprocal promises to arbitrate its claims against her, and cannot now repudiate the Agreement.

### C. Gunter's Claims Are Within the Scope of the Agreement.

Federal law dictates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Under Missouri law, "[t]he primary rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *Speedie Food Mart, Inc. v. Taylor*, 809 S.W.2d 126, 129 (Mo. Ct. App. 1991).

In this case, there is no doubt whatsoever that the parties intended claims like Gunter's to fall within the scope of the Agreement which, by its specific terms, "applies to any claim that [Gunter] may have against . . . any AT&T company," and further explicitly covers "claims includ[ing] without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship . . . termination . . . retaliation, discrimination or harassment . . . and all other state and local

10

LEGAL_US_W # 99542502.5

Case 4:19-cv-00589-HFS   Document 9   Filed 09/03/19   Page 15 of 18

statutory and common law claims." (Matyola Decl. ¶ 7 & Exh. 2.) Similarly broad language has traditionally sufficed to compel arbitration on these kinds of claims. *See, e.g.*, *Inzerillo*, No. 17-cv-00841-HFS, slip op. at 2, 6 (AT&T met burden of showing valid arbitration exists and covers Inzerillo's wrongful termination and harassment claims pursuant to Missouri Human Rights Act); *Karzon*, 2014 WL 51331, at *4 (compelling arbitration of plaintiff's Missouri Human Rights Act claim pursuant to the same Agreement at issue in this action); *Carlisle v. CitiMortgage, Inc.*, No. 4:06-CV-677 CAS, 2007 WL 1557411, at *1 (E.D. Mo. May 25, 2007) (compelling arbitration on age, race and sex discrimination claims pursuant to agreement to arbitrate "all employment disputes based on legally protected rights . . . that may arise between an employee or former employee and [CitiMortgage]"); *Schoenfeld*, 2006 WL 2707345, at *1 (compelling arbitration of gender discrimination and retaliation claims pursuant to agreement to arbitrate "any legal complaint or dispute" regarding plaintiff's employment); *Leatherberry*, 2010 WL 546871, at *1 (compelling arbitration of Missouri Human Rights Act claims of age discrimination and retaliation pursuant to arbitration agreement covering "any dispute arising out of or in connection with any aspect of [plaintiff's] employment or any termination thereof").

## CONCLUSION

Gunter and the Company agreed, effective February 7, 2012, to arbitrate any disputes arising with the other. Gunter has enjoyed the benefit of the Agreement, and should not now be permitted to avoid it simply because she would rather litigate in court. Accordingly, this Court should enter an order compelling Gunter to submit her claims to arbitration pursuant to the terms of the Agreement and staying further proceedings before this Court pending resolution of Gunter's claims in arbitration.

Dated: New York, New York
September 3, 2019

Respectfully submitted,

   /s/ Sara B. Tomezsko
Kenneth W. Gage* (NY Attorney No. 2477784)
Sara B. Tomezsko* (NY Attorney No. 5251533)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
212-318-6000 (telephone)
212-319-4090 (facsimile)
kennethgage@paulhastings.com
saratomezsko@paulhastings.com

* admitted *pro hac vice*

Daniel B. Boatright (MO Attorney No. 38803)
Sara K. McCallum (MO Attorney No. 67473)
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, Missouri 64106
816-627-4400 (telephone)
816-627-4444 (facsimile)
dboatright@littler.com
smccallum@littler.com

ATTORNEYS FOR DEFENDANT

12

LEGAL_US_W # 99542502.5
Case 4:19-cv-00589-HFS   Document 9   Filed 09/03/19   Page 17 of 18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant's Suggestions in Support of Motion to Compel Arbitration and Stay Proceedings and its supporting Declarations were filed using the Court's CM/ECF e-filing system on this 3rd day of September, 2019, which sent electronic notice of same to the following:

Michael A. Williams
WILLIAMS DIRKS DAMERON LLC
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
mwilliams@willamsdirks.com

ATTORNEYS FOR PLAINTIFF

                                        /s/ Sara B. Tomezsko
                                        Attorney for Defendant

13

LEGAL_US_W # 99542502.5

Case 4:19-cv-00589-HFS   Document 9   Filed 09/03/19   Page 18 of 18