# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| KIMBERLY GUNTER, | ) |
| Plaintiff, | ) Case No.: 4:19-CV-00589-HFS |
| v. | ) |
| AT & T SERVICES, INC., | ) |
| Defendant. | ) |

## PLAINTIFF'S REPLY SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

**COMES NOW** Plaintiff Kimberly Gunter ("Ms. Gunter" or "Plaintiff"), and pursuant to Local Rule 7(c)2 offers her Reply Suggestions in Opposition to Defendant's Motion to Compel Arbitration and Stay Proceedings, and states:

### PRELIMINARY STATEMENT

This summer, the Eighth Circuit held that an employee cannot be compelled to arbitrate her claims merely because the employer presented the employee with two online opportunities to review a purported arbitration agreement. See Shockley v. PrimeLending, 929 F.3d 1012, 1019 (8th Cir. 2019). Arbitration was denied in that case because there was no evidence that the employee reviewed the purported online arbitration agreement. The Eighth Circuit reasoned that arbitration is a matter of contract and "unequivocal acceptance" of an arbitration agreement is required. See id. at 1020. "An acknowledgment of a review of offered terms alone does not evince an intent to accept those terms." Id. at 1019. Importantly, the Eighth Circuit rejected the argument Defendant makes here and held "mere continuation of employment [does not manifest] the necessary assent to the terms of arbitration." Id.

In the present matter, Defendant has no proof that Ms. Gunter opened the email that contained the link to the purported arbitration agreement or reviewed information about arbitration on the intranet. Defendant's evidence is that, on one occasion, AT & T received an out-of- office reply from Ms. Gunter's email account after it sent an email with the link to the purported arbitration agreement. AT & T has no evidence that Ms. Gunter opened the email and clicked on the link to view the purported agreement.[1] Defendant's evidence of "acceptance" is that the AT & T employee who assumed Ms. Gunter's position after she was terminated read his emails so Ms. Gunter must have read hers. Moreover, one of the stated reasons for Ms. Gunter's termination was that she had her assistant complete some of her online work.

Defendant contends that this Court should compel arbitration because it has done so in a previous case that concerned the same purported arbitration agreement. See <u>AT & T Mobility Servs. LLC v. Inzerillo</u>, No. 4:17-cv-008410HFS (W.D. Mo. Jan. 31, 2018) (Attached as Ex. 11 to Defendant's Suggestions in Support of Motion to Compel Arbitration & Stay Proceedings). The problem with this argument is that these cases are fact-specific. <u>Inzerillo</u> is clearly distinguishable because the employee argued that his failure to "opt out" did not amount to an acceptance. There was no argument that the employee did not read the email with the hyperlink to the purported arbitration agreement. Here, Ms. Gunter never saw the email with the link to the purported agreement and the sole reason for her termination is that she had her assistant complete some of

---

[1] AT & T could have easily disseminated the purported arbitration agreement in a way that required employees to respond and would have provided Defendant with a record that the purported arbitration agreement was seen. AT & T generally used corporate training as the method of delivery for important issues and at the very least, required employee signatures for HR related-issues to ensure compliance. Instead, Defendant used a mass emailing to disseminate the purported arbitration agreement. No record exists that Ms. Gunter even opened the email.

her online work. Thus, her assistant reviewing emails is not only likely, it is what AT&T expected of service management and there is no basis to allege she reviewed the arbitration emails.

Therefore, based on the reasoning below, there is no evidence that Ms. Gunter unequivocally accepted AT & T's agreement to arbitrate. Since acceptance is lacking in this case, no valid arbitration agreement was formed. As such, Defendant's Motion to Compel Arbitration and Stay Proceedings must be denied.

## RELEVANT FACTUAL BACKGROUND

### *Ms. Gunter had a Long History with AT & T.*

Ms. Gunter, an African American, was hired by AT & T in 1997 and by 2010, had risen to the level of Vice President of Consumer Call Centers. (Gunter Decl. at ¶¶ 2-5). There are few African Americans who make it to top executive-level positions at AT & T and there are even fewer who are female. (Gunter Decl. at ¶ 6). In March 2011 (before AT & T sent the first email with the link to the purported arbitration agreement), Ms. Gunter filed for divorce in Jackson County Circuit Court. (Gunter Decl. at ¶ 8). She immediately mounted a fierce campaign to relocate herself and her minor child to Dallas, one of AT & T's hubs. (Gunter Decl. at ¶¶ 10-11), (Petition at ¶ 14). During the divorce proceedings, Ms. Gunter's supervisor warned her that she would be demoted or terminated if she did not relocate to Dallas. (Gunter Decl. at ¶ 9).

### *Different Treatment Based on Status as African-American Woman.*

More than one AT & T executive testified on Ms. Gunter's behalf in the divorce proceeding. (Petition at ¶ 15). The judge denied Ms. Gunter's relocation request and she was prohibited from moving out of Missouri with her minor child. (Petition at ¶ 16). As a compromise to AT & T, Ms. Gunter agreed to have a Dallas-based office where she worked approximately every other week. (Petition at ¶ 18). Despite this compromise, Ms. Arison, Ms. Gunter's

3

supervisor, told Ms. Gunter that she needed to make sacrifices and told her that her husband was a stay-at-home dad. (Petition at ¶ 22). Ms. Arison even asked Ms. Gunter if she could reconcile with her ex. (Petition at ¶ 23).

### *Complaint About Discrimination Results in Adverse Action.*

In 2016, Ms. Gunter was notified that she had been "surplused" as part of an alleged reduction-in-force. (Petition at ¶ 32). Ms. Gunter complained to her supervisor and upper managers that she believed she was targeted based on her status as a single mother who was legally obligated to stay in Missouri. (Petition at ¶ 36). AT & T changed its position regarding Ms. Gunter; however, that decision was short-lived. (Petition at ¶¶ 49 and 62). By January 2018, Ms. Gunter was under investigation by the asset protection department for allegedly procuring clients for an executive coaching business that she had started. At the time, Ms. Gunter did not have any clients and the business was not operational. (Petition at ¶¶ 69- 70).

### *Ms. Gunter's Termination is a Pretext for Discrimination.*

In January 2018, Ms. Gunter renewed her complaint that she believed she was being targeted because she was an African-American female who could not relocate to Dallas. (Petition at ¶¶ 62-630). At the time, Ms. Gunter was going back and forth between Kansas City and Dallas. (Gunter Decl. at ¶ 22). After the asset protection department found no evidence to support the charge, the allegations against Ms. Gunter morphed. (Petition at ¶¶ 66-68). This time, the complaint with Ms. Gunter's behavior was that she had her assistant complete her online work and was not working out of the Dallas hub. (Gunter Decl. at ¶¶ 35-37). On or about March 23, 2018, Ms. Gunter was terminated for the stated reason that she had her assistant complete some of her online work and was not an approved telecommuter. (Gunter Decl. at ¶ 35), (Petition at ¶ 70).

### *No Knowledge of Purported Arbitration Agreement Until 2019.*

After Ms. Gunter filed the present lawsuit against AT & T, defense counsel brought the purported arbitration agreement to Plaintiff's counsel's attention. (Boatright Decl. ¶¶ 4-5). In 2011 and 2012, Ms. Gunter was traveling between Kansas City and Dallas on a weekly basis. (Gunter Decl. ¶ 22). Ms. Gunter's assistant, Vivian Lewis, had full access to her emails and reviewed and responded to the them on a daily basis. (Gunter Decl. at ¶¶ 23-26). Ms. Gunter also had legal counsel and an HR employee assigned to her to support her AT & T business. (Gunter Decl. at ¶ 16). Neither ever mentioned the purported arbitration agreement during the weekly calls which is unusual since they always brought important issues to Ms. Gunter's attention. (Gunter Decl. at ¶¶ 16-20). Ms. Gunter never saw the purported arbitration agreement because she never read the emails that were allegedly sent to her and never read anything about arbitration on the intranet. (Gunter Decl. at ¶¶ 27-29 and 31).

## LEGAL ARGUMENT

### A. The Federal Arbitration Act ("FAA") does not Apply Because No Valid Arbitration Agreement between the Parties was Formed.

The FAA governs disputes if they are within the scope of an enforceable arbitration agreement. See Shockley, 929 F.3d 1017. "[P]arties cannot be compelled to arbitrate unless they have contractually agreed to be bound by arbitration." Id. Defendant's general statements of law about the FAA are not relevant here because the issues are: 1) whether Ms. Gunter and AT & T formed a valid arbitration agreement under Missouri law, and 2) whether the underlying dispute is within the scope of that agreement.[2] Defendant, as the party that seeks to compel arbitration,

---

[2] Defendant does not argue (nor could it) that arbitrability is for an arbitrator to decide. The purported arbitration agreement clearly states that "disputes arising out of or relating to the enforceability, revocability or validity of the Agreement or any portion of the Agreement . . . shall be determined only by a court of competent jurisdiction." (See Defendant's Ex. 2 to Matyola Declaration at p.2).

5

carries the burden to prove that the purported arbitration agreement is enforceable and that the dispute is covered by the agreement. See Shockley, 929 F.3d at 1017. Based on the fact that Defendant cannot even establish that a valid arbitration agreement was formed, Defendant's Motion to Compel Arbitration and Stay Proceedings must be denied.

> **B. AT & T HAS NOT MET ITS BURDEN TO PROVE THAT A VALID ARBITRATION AGREEMENT WAS FORMED BECAUSE THERE IS NO EVIDENCE THAT MS. GUNTER ACCEPTED AT & T'S OFFER TO ARBITRATE.**

In order to prove that a valid contract exists under Missouri law, Defendant must show: (1) an offer to Ms. Gunter, (2) acceptance by Ms. Gunter, and (3) sufficient consideration. See Shockley, 929 F.3d at 1017 (citing Baker v. Bristol Care, Inc., 450 S.W.3d 770, 774 (Mo. banc 2014) (continued at-will employment is not sufficient consideration in Missouri to support an arbitration agreement)). There is no dispute that AT & T made an offer to Ms. Gunter. The disputed elements are acceptance and consideration.

**There Was No Acceptance Because Ms. Gunter Never Saw the Offer & Never Manifested an Unequivocal Intention to be Bound.**

An employee accepts an offer when there is a positive and unambiguous response. Shockley, 929 F.3d at 1017 (citing Katz v. Anheuser-Busch, Inc., 347 S.W.3d 533, 544 (Mo.App. 2011)). "[T]he manifestation of an existing employee's unequivocal intention to be bound by an employer's proposed arbitration agreement as a new condition of employment necessitates more than the employee's mere continued work to satisfy Missouri's meeting of the minds requirement." Katz, 347 S.W.3d at 544. Silence is not enough. Shockley, 929 F.3d at 1017 (citing Kunzie v. Jack-in-the-Box, Inc., 330 S.W.3d 476, 484 (Mo.App. 2010). "We do not find that the mere continuation of employment manifests the necessary assent to [the employer's] terms of arbitration." The issue is whether "the signals sent by . . . [the employee] to the . . . [employer]

6

objectively manifest . . . [the employee's] intent to be bound." Shockley, 929 F.3d at 1017 (citing Kunzie, 330 S.E.3d at 484)).

In Shockley, the employer presented the employee with two online opportunities to review a handbook that purportedly contained an arbitration agreement. Shockley, 929 F.3d at 1019. The handbook was accessed through a hyperlink on the company's system. See id. The employee did not recall reviewing the handbook. See id. The employer had no evidence to dispute that. See id. The Eighth Circuit held "an employee's general knowledge or awareness of the existence of a contract [does not constitute] the positive and unambiguous acceptance required under Missouri law." Id. The Eighth Circuit held that no valid contract was formed because there was no acceptance. See id.

A Kansas federal trial court refused to enforce an alleged electronic arbitration agreement against an employee because it was not "inconceivable" that someone else could have logged into the employee's account and completed the form. See Kerr v. Dillard Store Serv., Inc., No. 07-2604-KHV, 2009 WL 385863, at *4 (D.Kan. Feb. 17, 2009). In Kerr, the employer provided each employee with a unique, confidential password that was only known to the employee. See id., at *1. The employee had to enter her confidential password, social security number and click "accept" at the bottom of the arbitration agreement screen. See id. Supervisors could access the employee's account. See id., at *2. While there was evidence that Kerr's supervisor had accessed Kerr's account, the Court did not specifically find that the supervisor had electronically signed the arbitration agreement. See id.

The cases cited by Defendant are either not on point. See Circle v. Chase Bank USA, 583 F.3d 549 (8th Cir. 2009) (issue was whether arbitration clause in credit card agreement was unconscionable, not whether the credit card user assented), Berkley v. Dillard's, Inc., 450 F.3d

7

775 (8th Cir. 2006) (employee assented to arbitration agreement by refusing to sign acknowledgment), Karzon v. AT & T, Inc., 2014 WL 51331, at *1 (E.D. Mo. Jan. 7, 2014) (the AT & T employee actually accessed the online arbitration agreement), Inzerillo, No. 17-cv-00841-HFS (W.D. Mo. Jan. 31, 2018) (Attached as Ex. 11 to Defendant's Suggestions in Support of Motion to Compel Arbitration & Stay Proceedings) (AT & T employee did not argue that he did not see the arbitration agreement, he merely argued that a failure to "opt out" is not evidence of assent), Cova v. Charter Commc'ns. Inc., 2017 WL 666097, at *1 (E.D. Mo. Feb. 17, 2017) (cable customer never argued that he did not see cable bill that contained notice of arbitration agreement), Walker v. Rogers, 182 S.W.3d 761, 768 (Mo. App. 2006) (couple accepted unilateral contract by cashing check), Citibank (South Dakota), v. N.A. v. Wilson, 160 S.W.3d 810 (Mo.App. 2005) (credit card user could have rejected revised agreement by canceling her credit card, but continued to use it), Heritage Roofing v. Fischer, 164 S.W.3d 128 (Mo.App. 2005) (oral contract was created after customer told contractor, "I approve it, I want you to go ahead with the work"), Best Buy Builders, Inc. v Siegel, 409 S.W.3d 562 (Mo.App. 2013) (homeowner requested numerous upgrades to remodeling contract and proceeded with work, despite the fact that the contractor told the homeowner that this would increase the remodeling costs), Guidry v. Charter Commc'ns., Inc., 269 S.W.3d 520 (Mo.App. 2008) (apartment complex agreed to exclusivity term in contract with cable provider and even sent a letter to the cable provider specifically mentioning exclusivity),

In the present matter, Ms. Gunter never saw the emails that contained a link to the purported arbitration agreement. (Gunter Decl. ¶¶ 27-29 and 32). She never read anything on the intranet about arbitration either. (Gunter Decl. ¶¶ 15 and 30-31). Ms. Gunter, who was a high-level executive, gave her assistant access to her email and other online accounts. (Gunter Decl. ¶ 23). While Ms. Gunter's former assistant stated that she did not read or delete any emails regarding the

8

terms and conditions of Ms. Gunter's employment, she also did not confirm that she saw the arbitration emails in Ms. Gunter's inbox and was aware of the fact that Ms. Gunter had read them. In fact, one of the stated reasons for Ms. Gunter's termination was that she had her assistant complete some of her online work. (Gunter Decl. ¶ 35).

It is curious that AT & T would disseminate such an important document as basically a spam email. AT & T generally had handled matters involving the terms and conditions of employment through corporate training so that employees were required to respond and most HR-related policies require an employee signature in order to ensure compliance. (Gunter Decl. ¶¶ 12-14). In 2011 and 2012, Ms. Gunter had legal counsel and an HR employee assigned to her to support her in her AT & T business. (Gunter Decl. ¶ 16). They generally brought important matters to Ms. Gunter's attention that required her to respond and should have mentioned a purported arbitration agreement. (Gunter Decl. ¶ 18). The HR employee assigned to Ms. Gunter never mentioned the purported arbitration agreement that required Ms. Gunter to "opt out." (Gunter Decl. ¶ 19). The legal counsel assigned to Ms. Gunter never mentioned the purported arbitration agreement that required Ms. Gunter to "opt out." (Gunter Decl. ¶ 20).

AT & T argues that the purported arbitration agreement here should be upheld because it has been upheld in other cases. However, Ms. Gunter's case is distinguishable from the other cases because Ms. Gunter did not see the emails with the link to the arbitration form or read about arbitration on the company intranet. Ms. Gunter's HR employee and legal counsel should have brought the purported arbitration agreement to her attention, but they did not do so. Ms. Gunter cannot assent to a contract that she knows nothing about. AT & T has no evidence to dispute Ms. Gunter's lack of knowledge. Further, there is evidence that Ms. Gunter's assistant had access to

her email account and responded to emails for Ms. Gunter. This case is analogous to Kerr and the Court is not required to find that the assistant deleted the email.

Based on the above, Defendant has not carried its burden and shown a positive and unambiguous acceptance to arbitrate by Ms. Gunter.

### C. CONSIDERATION IS LACKING BECAUSE CONTINUED AT-WILL EMPLOYMENT IS NOT CONSIDERATION TO SUPPORT AN ARBITRATION AGREEMENT IN MISSOURI AND AT & T LIMITED THE TYPES OF CLAIMS IT HAS TO ARBITRATE.

**Continued At-Will Employment is Not Consideration to Support an Arbitration Agreement.**

"Consideration consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." Baker, 450 S.W.3d at 774. Continued at-will employment does not provide consideration to support an arbitration agreement because the employer is not promising to do anything - the employer can terminate the employee immediately after the agreement is signed. See id. Missouri courts have consistently held that a promise of continued "at-will" employment is not consideration for an alleged arbitration agreement. See Baker, 450 S.W.3d at 777, Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15, 27 (Mo. App. 2008); Frye v. Speedway Chevrolet Cadillac, 321 S.W.3d 429 (Mo.App. 2010), Kunzie, 330 S.W.3d at 484; Clemmons v. Kansas City Chiefs Football Club, Inc., 397 S.W.3d 503 (Mo. App. 2013); Alst v. Harrell, 528 S.W.3d 442 (Mo. App. 2017); Whitworth v. McBride & Son Homes, 344 S.W.3d 730 (Mo.App. 2011) . Some Missouri courts have also held that an offer of at-will employment at the inception of the employment relationship is not sufficient consideration to support an arbitration agreement. See Marzette v. Anheuser-Busch, Inc. 371 S.W.3d 49 (Mo.App. 2012); Sniezek v. Kansas City Chiefs Football Club, 402 S.W.3d 580 (Mo.App.

2013); Jimenez, 475 S.W.3d at 679; Jackson v. Higher Educ. Loan Auth. Of Mo., 497 S.W.3d 283; Wilder v. John Youngblood Motors, Inc., 534 S.W.3d 902 (Mo. App. 2017).

The case cited by Defendant is distinguishable from the present matter. See Carter v. Firestone, 2006 WL 1153808, at *1 (E.D. Mo. Apr. 28, 2006) (arbitration agreement was presented at inception of employment),

**AT & T Limited the Types of Claims it Has to Arbitrate & Preserved Others.**

Defendant argues that consideration is supported by "mutual promises" and states that AT & T's promises to arbitrate all claims it has against Ms. Gunter. However, in the purported arbitration agreement, AT & T is not really promising to arbitrate all claims it has against Ms. Gunter while Ms. Gunter is required to arbitrate all claims she has against AT & T. The phrase at issue states:

[C]overed claims **include without limitation** those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, defamation, retaliation, discrimination or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964 . . .

(Attached as Ex. 2 to Defendant's Motyola Declaration). AT & T has restricted the types of claims it has to arbitrate against Ms. Gunter by the use of the phrase "include without limitation" because that phrase limits the scope of the preceding noun phrase. See Shelby County State Bank v. Van Diest Supply Co., 303 F.3d 832 (7th Cir. 2002) (a court must give "reasonable and effective meaning to all terms"). Thus, AT & T would be free to file a civil suit for claims it might have against Ms. Gunter i.e., common law theft, which is specifically not mentioned.

The case cited by Defendant either have no precedential value or are not on point. See Leatherberry v. Village Green Mgmt. Co., 2010 WL 546871, at 1 (E.D. Mo. Feb. 9, 2010) (the opinion does not provide the language from the arbitration agreement that binds the employer to

11

arbitration), McIntosh v. Tenet Health Sys. Hosps., Inc., 48 S.W.3d 85 (Mo.App. 2001) (no "include without limitation" language in agreement).

### D. SCOPE OF AGREEMENT

In the present matter, Ms. Gunter has asserted claims for race and sex discrimination, harassment and retaliation in violation of the Missouri Human Rights Act. These types of claims would fall into the scope of the purported arbitration agreement had one been formed between the parties.

### CONCLUSION

Defendant has failed to establish the existence of a valid contract because there was no acceptance or consideration.

**WHEREFORE,** Plaintiff respectfully requests an Order denying Defendant's Motion to Compel Arbitration and Stay Proceedings, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

/s/ Michael A. Williams
Michael A. Williams MO Bar 47538
1100 Main Street, Suite 2600
Kansas City, MO 64105
mwilliams@williamsdirks.com
(o) 816-945-7110
(f) 816-945-7118

**Attorney for Plaintiff**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of September 2019, I filed the foregoing with the Court's CM/ECF service which will automatically send an electronic copy to all counsel of record.

/s/ Michael A. Williams<br>
Michael A. Williams